New London District Court
No. 82-072

KEARSARGE SOARING ASSOCIATION

v.

KEARSARGE VALLEY GOLF CLUB, INC.

April 29, 1983

*Feeney & Kraeger*, of Newport (*Thomas G. Kraeger* on the brief and orally), for the plaintiff.

*Sheehan, Phinney, Bass & Green P.A.*, of Manchester (*Peter S. Cowan* on the brief and orally), for the defendant.

BROCK, J. The defendant, Kearsarge Valley Golf Club, Inc., appeals from a decision of the New London District Court (*Carney*, S.J.) holding it liable for damages to the plaintiff Kearsarge Soaring Association's aircraft. We affirm.

In August 1980, a member of the plaintiff association landed a plane owned by the plaintiff at the defendant's facility in Sutton. In order to avoid some golfers who were hitting golf balls onto the runway, the pilot maneuvered the aircraft to the right side of the runway. The plane was damaged as it was being parked, when its left landing gear fell into a cesspool which had been covered over with a piece of plywood. No signs were posted indicating where aircraft should be parked at the defendant's facility, nor was there anyone present to assist or direct pilots.

A certificate issued by the New Hampshire Aeronautics Commission described the defendant's facility as being a private, noncommercial landing area and restricted its commercial use. The facility was also designated as a "civil-public airport" on a regional map prepared by the National Oceanic and Atmospheric Administration (NOAA) and published by the United States Department of Commerce. NOAA maps are regularly relied upon by pilots, and the trial judge found that the plaintiff's pilot at all times relevant to this case relied upon information contained on the map.

A variety of airport designations are used on NOAA maps, including one symbol which designates an airport as being private, nonpublic, but available for emergency use. The trial court found, however, that the defendant had caused its facility to be designated as a "civil-public" facility by supplying information to that effect to the NOAA.

The defendant also advertised its landing area in promotional materials, stating that the Kearsarge Inn and Country Club had:

"OUR OWN LANDING STRIP, 3,000 feet of firm sod, is right next to the clubhouse. Kearsarge is 21 miles 160 [degrees] from Lebanon Omni; 16 miles 317 [degrees] from Concord Omni; 39 miles 036 [degrees] from Keene Omni. Our runway is NE/SW."

As an aircraft landing area, the defendant's facility is subject to the provisions of RSA chapter 422. RSA 422:17-a creates a broad exemption from liability for privately owned, non-commercial facilities. It provides specifically that:

"An owner, lessee, or occupant of premises on which *private non-commercial air navigation facilities* are located owes no duty of care to keep the premises safe for public use by others or to give any warning to wilful users of the premises of hazardous conditions. An owner, lessee, or occupant of premises on which private non-commercial air navigation facilities are located who give[s] permission to another to use the facilities does not thereby (a) extend any assurance that the premises are safe, or (b) constitute the person to whom permission has been granted the legal status of an invitee to whom a duty of care is owed, or (c) assume responsibility for or incur liability for any injury to person or property caused by any act of the person to whom the permission has been granted."

(Emphasis added.)

In a pretrial motion, the defendant, relying upon this statutory provision, sought dismissal of the plaintiff's action on the ground that it was absolutely exempted from any liability. The District Court (*McSwiney,* J.) denied the motion, stating that it wished to hear evidence on the issue of "[w]hether or not any actions taken by the defendant would reasonably cause a pilot of average prudence to believe that [t]he defendant's landing strip was other than a private non-commercial airport facility governed by RSA 422:17-a."

After the plaintiff presented its case, the defendant renewed its motion. The trial court ruled that RSA 422:17-a did not exempt owners like the defendant, who had invited the public to use its facilities, from liability for negligence. Finding that the defendant had failed in its duty to exercise reasonable care in the maintenance and operation of its property, that its failure caused the damage to the plaintiff's aircraft, and that the plaintiff itself was not negligent, the court awarded the plaintiff $2,019.17.

On appeal, the defendant argues that the trial court erred in

determining that its facility did not fall within the meaning of "non-commercial" under RSA 422:17-a so as to be exempt from liability.

▪ The term *"non-commercial* air navigation facilities" is not defined in RSA 422:17-a. The definitional section of RSA chapter 422, however, contains two provisions which, when read together, make it clear that an air navigation facility such as a landing area is *"commercial"* when it is "used or intended to be used to render an aeronautical service for compensation. . . ." RSA 422:3, XVII; *see* RSA 422:3, VI (Supp. 1979). The defendant argues that since it received no direct compensation from the operation of its airfield, it was by definition not "commercial" and therefore was automatically and absolutely exempt under RSA 422:17-a. We disagree.

The defendant's literal interpretation of the statutory language could lead to results which do violence to the expressed legislative intent underlying RSA chapter 422. *Cf. Whitman v. New Hampshire Electric Cooperative, Inc.*, 123 N.H. 111, 114, 459 A.2d 224, 225 (1983). The declaration of purpose of RSA chapter 422 states, in relevant part, that the statute is intended to provide for "the protection and promotion of the public interest and safety in connection with the operation of aircraft." RSA 422:2(d). Carrying the defendant's argument to its logical conclusion, the owner of an airfield could exempt himself from any liability due to negligence by simply not charging specific fees for the use of the airfield, while nonetheless deriving great economic benefit from it. We do not believe that the legislature intended such a result.

▪ The legislative history indicates that the statute was designed to remove "certain liability obligation in connection with [the] operation of privately owned fields *used strictly for non-commercial purposes.*" N.H.S. JOUR. 912 (1965) (emphasis added). After carefully considering the evidence in this case, we hold that the defendant, which admittedly advertised and promoted its airfield as a means of attracting paying customers to its business premises, and which also caused itself to be listed as being open for public use on the NOAA map used by pilots, cannot be exempted from liability by virtue of RSA 422:17-a. That statutory provision was intended to exempt only those private airfields which are *actually* operated in a non-commercial context. Air facility owners who solicit public air traffic in order to benefit their other business activities may not rely upon RSA 422:17-a to avoid liability.

*Affirmed.*

All concurred.